**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
CASE NO:

**MATTHEW D'ANTONIO**,
     Plaintiff,

v.

**BROWARD COUNTY, FLORIDA,** a
political subdivision of the State of Florida,
     Defendant.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Matthew D'Antonio brings this action against the Defendant, Broward County, Florida, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for damages and injunctive relief arising from unlawful employment discrimination, harassment, and retaliation based on Plaintiff's sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2025, alleging discrimination based on sex (sexual orientation) and retaliation.

4. All conditions precedent to the filing of this action have been satisfied or excused.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business in this district and because the acts and omissions giving rise to this action occurred within this district.

PARTIES

6. Plaintiff Matthew D'Antonio is an individual residing in Broward County, Florida, at 906 NE 28th Street, Wilton Manors, Florida 33334.

7. At all times relevant to this Complaint, Plaintiff was employed by Defendant as Manager, Information Systems, with an annual salary of $142,382.

8. Defendant Broward County, Florida, is a political subdivision of the State of Florida operating the Broward County Aviation Department, Fort Lauderdale-Hollywood International Airport, with its principal place of business at 320 Terminal Drive, Suite 200, Fort Lauderdale, Florida 33315.

9. At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b), employing more than 500 employees.

FACTUAL ALLEGATIONS

A. Plaintiff's Employment and Performance

10. Plaintiff was hired by Defendant Broward County Aviation Department on April 20, 2020, as Manager, Information Systems.

11. Plaintiff is an openly gay man.

12. Throughout his employment, Plaintiff received the highest performance ratings of "exceeds expectations" on every review.

13. Plaintiff earned a Master of Public Administration with a 4.0 GPA in December 2024 while working full-time.

14. In November 2024, Plaintiff was awarded a nonstandard salary adjustment approved by the Director of Human Resources in recognition of his outstanding performance.

B.  Sexual Orientation Harassment and Hostile Work Environment

15. In October 2021, Plaintiff's direct supervisor, Angela Scott (Enterprise Director of Information Technology), made homophobic comments to Plaintiff, stating that some people in government don't like working with gay people because they care too much about work, and that Plaintiff's predecessor was a lesbian named Bonnie Greenberg who "had the same problem" as Plaintiff.

16. From May 5 through May 9, 2025, Plaintiff attended a work conference with a male subordinate employee, Justin Nales (Systems Network Analyst Senior).

17. On or about May 19, 2025, upon returning from the work conference, Plaintiff discovered that a large framed photograph of him had been placed on Mr. Nales' desk without Plaintiff's knowledge or consent.

18. The photograph was blown up, framed, and publicly displayed in an area visible to all of Plaintiff's direct reports and other employees.

19. The display of this photograph implied a romantic or inappropriate relationship between Plaintiff, as a supervisor, and his subordinate, Mr. Nales.

20. A witness observed members of management openly making jokes and pointing at the photograph, indicating that management was not only aware of the harassment but participated in it.

21. As an openly gay individual, Plaintiff reasonably believes this conduct stemmed from stereotypes and hostility related to his sexual orientation.

22. The photograph display served as public mockery of Plaintiff's sexual orientation and undermined his authority as a manager.

23. On May 19, 2025, Plaintiff reported the harassment to Nardia Walker, Human Resources Officer, expressing concern about coworkers being disrespectful and making homophobic comments.

24. On May 22, 2025, HR Officer Walker sent Plaintiff a memorandum referring the matter to Professional Standards and acknowledging Plaintiff's concerns about his supervisor's ability to maintain confidentiality.

25. On May 29, 2025, Plaintiff filed a formal EEO complaint with Broward County Professional Standards regarding the sexual orientation harassment (Case No. 25-0059-E-E).

C.   Retaliation Following Protected Activity

I.   Intimidation and Interference with Investigation

26. Between July 2, 2025, and August 15, 2025, Michael Matteo, a peer Manager of Information Systems whose office was directly adjacent to Plaintiff's, repeatedly and loudly discussed the ongoing EEO investigation in a manner calculated to intimidate Plaintiff.

27. On July 2, 2025, Mr. Matteo openly discussed Professional Standards with his subordinate employee Michael Raglin, then closed the door and conducted a loud, hostile meeting about Plaintiff's complaint.

28. On July 16, 2025, at approximately 12:30 PM, Mr. Matteo conducted a loud meeting about the investigation with Michael Raglin.

29. On July 17, 2025, at approximately 1:30-2:00 PM, Mr. Matteo conducted a loud meeting about the investigation with subordinate employees Corey King and Michael Raglin.

30. On August 15, 2025, at approximately 3:00-4:00 PM, Mr. Matteo engaged in discussion and laughing about "the photo" with Joe Meloro.

31. Mr. Matteo spoke and shouted so loudly that Plaintiff could hear him through the wall and door. Plaintiff reasonably believed the volume was intentionally designed to intimidate and threaten him and to undermine the Professional Standards investigation.

II. Retaliatory Reassignment of Key Witness

32. On August 1, 2025, just 62 days after Plaintiff filed his EEO complaint, Plaintiff's supervisor Angela Scott reassigned Justin Nales, a primary witness in Plaintiff's pending EEO investigation, without Plaintiff's knowledge, consultation, or advance notice.

33. Mr. Nales had been trained for years to support Plaintiff in managing the Maximo system, which is critical to Plaintiff's job responsibilities.

34. The reassignment was memorialized in a memorandum dated August 1, 2025, from Angela Scott to Justin Nales, stating that his position would be moved effective Monday, August 4, 2025.

35. To Plaintiff's knowledge, no other employees in the division were reassigned during this timeframe, demonstrating that the decision was targeted and not part of any broader staffing action.

36. On September 8, 2025, Aviation HR Officer Nardia Walker confirmed that she was not consulted about and was unaware of Mr. Nales' reassignment, despite the ongoing EEO investigation.

37. The reassignment removed Plaintiff's only trained resource with specific Maximo expertise.

38. The reassignment fueled workplace speculation and ridicule regarding the investigation and Plaintiff's professional relationship with Mr. Nales, thereby undermining Plaintiff's credibility and professional standing.

39. The reassignment materially impaired Plaintiff's ability to perform essential job functions.

40. No operational data analysis supported the reassignment. Such data was not requested until September 18, 2025, more than six weeks after the reassignment occurred.

41. This abrupt change broke from established practice. In May 2024, staffing decisions had been made collaboratively between Angela Scott and Plaintiff, as documented by text messages.

III. Adverse Health Effects

42. As a direct result of the ongoing harassment, intimidation, and retaliation, Plaintiff's health deteriorated rapidly in early August 2025.

43. Plaintiff experienced insomnia, extreme anxiety, weight loss, and cardiac issues including chest pains, rapid heart rate, and shortness of breath.

44. Plaintiff was treated by four medical providers who documented that his condition was related to workplace issues.

45. On August 29, 2025, Dr. Jennifer Bartczak of Rowan Tree Medical, P.A., evaluated Plaintiff and documented that he was medically stable to return to work with restrictions requiring physical separation from his current office location.

46. Plaintiff's primary care physician ordered him to take FMLA leave effective August 18, 2025.

47. Plaintiff took FMLA leave from August 18, 2025, through September 2, 2025.

48. Plaintiff's physician allowed him to return to work only under the condition that he be physically separated from those harassing and retaliating against him.

IV. Forced Office Relocation

49. On August 18, 2025, Plaintiff formally requested temporary accommodations, requesting physical separation from Mr. Matteo.

50. On September 2, 2025, COO Michael Nonnemacher issued a memorandum temporarily reassigning Plaintiff to a vacant office on the 4th floor in the Airport Development section, effective Tuesday, September 2, 2025, during the investigation and pending further determination.

51. This relocation separated Plaintiff from his team on a different floor, far away from his staff, making it difficult for him to effectively manage and perform his duties.

V. Pattern of Setting Up to Fail

52. On September 23, 2025, the County Auditor's report (Commission Agenda Item #25-1290) was sent to Aviation CEO Mark Gale, referencing Maximo 16 times and confirming ongoing project scrutiny.

53. Justin Nales was Plaintiff's lead staff member for the Maximo system.

54. The removal of Plaintiff's Maximo expert while this critical project faces audit scrutiny appears designed to set Plaintiff up to fail and potentially manufacture grounds for termination.

VI. Second EEO Complaint

55. On September 11, 2025, Plaintiff filed a second formal EEO complaint with Broward County Professional Standards regarding the retaliation he experienced.

D. Continuing Discrimination

56. The retaliatory conditions continue to the present date.

57. Plaintiff remains separated from his team and is unable to effectively perform his job duties with inadequate staffing on a critical system under audit scrutiny.

58. Plaintiff has been excluded from meetings and has had his travel budget misrepresented, undermining his credibility and damaging his professional standing.

59. The ongoing retaliation creates a continuing hostile work environment and constitutes a continuing violation.

COUNT I
DISCRIMINATION BASED ON SEX (SEXUAL ORIENTATION)
IN VIOLATION OF TITLE VII

60. Plaintiff incorporates by reference all preceding paragraphs.

61. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits discrimination in employment on the basis of sex, which includes discrimination based on sexual orientation.

62. Defendant discriminated against Plaintiff on the basis of his sex (sexual orientation) by subjecting him to a hostile work environment, including homophobic comments and the public display of a framed photograph designed to mock and demean him based on stereotypes about gay men.

63. The harassment was severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

64. Defendant knew or should have known about the harassment and failed to take prompt and appropriate corrective action.

65. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including but not limited to emotional distress, mental anguish, loss of enjoyment of life, harm to professional reputation, medical expenses, and other compensatory damages.

COUNT II
RETALIATION
IN VIOLATION OF TITLE VII

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Title VII prohibits retaliation against employees who oppose unlawful employment practices or participate in proceedings under Title VII.

68. Plaintiff engaged in protected activity by opposing sexual orientation harassment and filing internal EEO complaints with Defendant on May 28, 2025, and September 11, 2025.

69. Defendant subjected Plaintiff to adverse employment actions because of his protected activity, including but not limited to: reassigning a key witness and critical staff member without consultation; subjecting him to intimidation and interference with the internal investigation; forcing him to relocate to a different floor away from his team; excluding him from meetings; and creating conditions designed to cause him to fail in his position.

70. There is a causal connection between Plaintiff's protected activity and the adverse actions taken against him. The adverse actions occurred shortly after Plaintiff filed his May 28, 2025, EEO complaint and while the investigation was ongoing.

71. Defendant's actions would dissuade a reasonable employee from engaging in protected activity.

72. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including but not limited to emotional distress, mental anguish, loss of enjoyment of life, harm to professional reputation, medical expenses, and other compensatory damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Matthew D'Antonio respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant on all counts;

B. Award Plaintiff compensatory damages for past and future pecuniary losses, emotional distress, mental anguish, loss of enjoyment of life, medical expenses, and other injuries sustained as a result of Defendant's unlawful conduct;

C. Award Plaintiff punitive damages to punish Defendant for its willful, wanton, and reckless conduct and to deter similar conduct in the future;

D. Issue a permanent injunction enjoining Defendant from continuing to engage in unlawful discrimination and retaliation against Plaintiff;

E. Order Defendant to take appropriate corrective action to remedy the effects of its unlawful conduct, including but not limited to restoring Plaintiff to his full managerial authority with appropriate staff and resources;

F. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and applicable law;

G. Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

H.  Grant such other and further relief as this Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**DATED FEBRUARY 13, 2026**                    **FOR PLAINTIFF:**

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
FBN: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, Fla. 33331
(954) 618-1043